No. 25822

## The People of the State of Colorado v. Ted Michael Smith

(524 P.2d 607)

Decided July 15, 1974.                    Rehearing denied August 6, 1974.

John P. Moore, Attorney General, John E. Bush, Deputy, E. Ronald Beeks, Assistant, for plaintiff-appellee.

Ashen and Fogel, Marshall A. Fogel, William L. Keating, Robert L. Pitler, for defendant-appellant.

MR. JUSTICE LEE delivered the opinion of the Court.

Ted Michael Smith was convicted by a jury of vehicular homicide in violation of 1965 Perm. Supp., C.R.S. 1963, 13-5-155. He seeks reversal of his conviction, challenging the sufficiency of the evidence, and he asserts additionally that the trial court erred prejudicially in several other respects. Particularly, he contends that the court improperly denied him discovery of an endorsed witness' statement. We reverse the judgment of conviction and remand the case for a new trial.

I.

The People's evidence established that appellant, a Denver police officer, while driving a police vehicle on routine patrol, at approximately 4 a.m. on December 25, 1971, struck and killed a pedestrian who was crossing the intersection of 34th and High Street. The autopsy performed on the deceased revealed that he was intoxicated, having a blood alcohol level of .330%.

The posted speed limit where the accident occurred was 30 miles per hour. The People's expert witness estimated the speed of the patrol car at approximately 71 miles per hour when appellant first applied his brakes to avoid striking the victim. Appellant explained he was in pursuit of a motorist. He did not, however, have his red light or siren activated during the chase. The evidence showed that the patrol vehicle skidded 68 feet prior to the point of impact and approximately 134 feet thereafter, coming to rest against a tree in the right-hand parkway of East 34th Avenue.

Appellant and his partner on patrol, Officer Michael Buckley, who was riding in the right front seat, were both injured as a result of the accident and taken to the Denver general hospital for treatment. Buckley was placed under sedation. Shortly thereafter, he was questioned about the accident by an agent of the Staff Inspection Bureau of the Denver police department. His statement was recorded. In connection with the bureau's continuing investigation of the accident, Buckley was again questioned on December 28, 1971, and this statement was also recorded. Officer Buckley

was the only eyewitness to the accident other than appellant, and, although he was endorsed as a witness on behalf of the People, he was never called to testify.

Appellant testified in his own behalf. He explained that he and his partner were patrolling District No. 2, which was recognized as a high-crime district. He saw a car turn east on to East 34th Avenue with its lights out. This raised a suspicion in his mind and he pursued the car, which was rapidly accelerating away. He did not turn on his red lights or siren purposely, so as not to alert the other car of his pursuit. He described the accident as follows:

"* * * I accelerated up East 34th Avenue as this party was accelerating away, and I saw the deceased, Mr. Police, standing around the north, just to the north of the center line. I slammed on the brakes when I seen him. I put the car into park and veered as far as I could to the right to get away from Mr. Police. As I did so, Mr. Police seemed to dart toward my car, and contact was made with the right — pardon me — the left front fender, just in front of the fender wall. At that time Mr. Police hit the windshield. The windshield was shattered. We went up over the curb and came to rest against a tree. My partner at that time was unconscious, * * *."

▪ The People concede that appellant's testimony, if believed, probably would require an acquittal. The jury, however, was free to accept or reject appellant's testimony. *Maisel v. People,* 166 Colo. 161, 442 P.2d 399. Viewing the evidence in the light most favorable to the People, a prima facie case was established which required submission of the cause to the jury. There were circumstances attending the accident from which the jury could conclude that appellant operated his vehicle with a willful or wanton disregard for human life. *Cf. Steeves v. Smiley,* 144 Colo. 5, 354 P.2d 1011. Accordingly, we do not reverse the conviction on the grounds of insufficiency of the evidence.

II.

▪ We agree with appellant's contention that the court improperly denied him discovery of Officer Buckley's first

recorded statement. Under the circumstances of this case, denial of this discovery requires reversal, and a new trial.

Officer Buckley was the only other surviving eyewitness to the accident. While under sedation at the hospital, he gave a statement to agents of the Staff Inspection Bureau. According to representations of appellant's counsel, Buckley advised him that he could not recall the contents of his hospital statement because of his sedated condition at the time the statement was given. Appellant twice unsuccessfully sought discovery of this statement from the district attorney under Crim. P. 16(c). In denying his discovery motions, the trial court precluded appellant from making an informed decision as to whether to call Buckley to the stand. This, in our view, denied appellant a fair trial.

The circumstances attending appellant's requests for disclosure evinced a pattern of noncooperation by the prosecution approaching prosecutorial misconduct. Appellant's first request for disclosure was in his pretrial motion for discovery and inspection. Therein he requested permission to inspect and copy "all evidence which would be favorable to the defendant." The district attorney responded in writing as follows:

"(2) The People of the State of Colorado in response to paragraph two of defendant's motion have no evidence which might be considered exculpatory nor any that would even be favorable, which would not be available to the defendant, should the same exist, by the exercise of due diligence on his part in reasonable efforts of investigation and preparation for trial."

The district attorney's position, reiterated in the People's brief on appeal, was that the substance of the statement Buckley gave to the Staff Inspection Bureau while in the hospital could be obtained by interviewing Buckley. On July 27, 1972, prior to selecting the jury, counsel for appellant renewed his request for discovery, and represented that Buckley in fact could not remember the contents of his hospital statement. Counsel offered to have Buckley so testify to the court. The court summarily denied the request

for discovery — this in spite of an offer of proof as to the materiality, relevancy and necessity of having the statement. Counsel explained that Buckley was the only other eyewitness to the accident. He noted that while Buckley had been listed as a witness for the prosecution, he also understood that the district attorney was undecided whether he would call Buckley as a witness. In view of this, he explained, he needed the statement to determine whether to call Buckley as a defense witness and to determine the scope of his interrogation in light of the statement. The decision to call or not to call Buckley as a defense witness hinged upon whether that statement contained material which might be helpful, or which might be harmful and used by the district attorney for impeachment purposes.

Counsel further pointed out that under Crim. P. 16(c), effective as of April 1, 1972, the trial court had discretion to order pretrial discovery of information relevant and material to the defense, including a statement from an endorsed prosecution witness. *People v. Dist. Ct.,* 172 Colo. 23, 469 P.2d 732.

The trial court acknowledged that it understood it had authority to order discovery. It nevertheless, on the district attorney's objection, disallowed the request without explanation.

Appellant's second motion to discover the hospital statement came at the close of the People's case. The district attorney had not called Officer Buckley to the stand. Counsel for appellant reiterated his position that Buckley's statement was material and crucial to the defense. The district attorney resisted the motion, stating:

"Your Honor, it's speculating that it may be helpful to their defense. I'll state right now, again, that we have nothing in our file that will help them in their defense in this case. Furthermore, the rule requires us to give them statements after a witness has testified, and if he testified in their case, then I'd have to give them the statement at that time. * * *"

In later argument the district attorney twice repeated the representation that he had nothing exculpatory in his file.

It is apparent that the trial court misapprehended its authority when it denied the motion. The court stated in pertinent part:

"* * * Under the circumstances, I don't think the court has the right to compel the district attorney to furnish the statement of Mr. Buckley to the defense counsel * * *."

■ We find the trial court's ruling to be clearly erroneous. Crim. P. 16(c) vested discretionary authority in the trial court to compel disclosure of relevant and material information in the hands of the prosecution. *People v. Dist. Ct., supra.* In that case, in discussing the proper application of Crim. P. 16(c) to a witness' statement this Court stated:

"* * * Statements of prosecution witnesses, *which before the adoption of this discretionary rule would not have been available to the defense until the witness was called by the state to testify on direct examination,* are now properly discoverable under Rule 16(c). We do not say, however, that the defendant has an absolute right to such discovery under any and all circumstances. Rather, the trial court must exercise sound discretion in permitting such discovery, guided by the standards suggested in subsection (2) of Rule 16(c), and in granting such discovery the court may enter appropriate protective orders under Rule 16(f)." (Emphasis added.)

*Cf. Parlapiano v. Dist. Ct.,* 176 Colo. 521, 491 P.2d 965. *See also* ABA, *Standards Relating to Discovery and Procedure Before Trial* § 2.1(a)(i); Comment, *The Prosecutor's Constitutional Duty to Reveal Evidence to the Defendant,* 74 Yale L. J. 136.

The People contend that *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215, and *Giles v. Maryland,* 386 U.S. 66, 87 S.Ct. 793, 17 L.Ed.2d 737, require disclosure only of evidence favorable to the defendant, and that, as there is no indication in the record that Buckley's statement was favorable, denial of its discovery was appropriate.

■ *Brady v. Maryland, supra,* establishes in unmistakable language that suppression by the prosecution of evidence favorable to an accused violates due process under the

Fourteenth Amendment. The holding of *Giles v. Maryland* supports *Brady, supra.* In a concurring opinion in *Giles,* Mr. Justice Fortas wrote:

"* * * A criminal trial is not a game in which the State's function is to outwit and entrap its quarry. The State's pursuit is justice, not a victim. If it has in its exclusive possession specific, concrete evidence which is not merely cumulative or embellishing and which may exonerate the defendant or be of material importance to the defense — regardless of whether it relates to testimony which the State has caused to be given at trial — the State is obliged to bring it to the attention of the court and the defense. * * *"

We are in agreement with the foregoing statement. *See People v. Walker,* 180 Colo. 184, 504 P.2d 1098; *Cheatwood v. People,* 164 Colo. 334, 435 P.2d 402.

■ Moreover, in our view the determination of usefulness of evidence in this context is a defense function, not a professional function. In certain cases even an *in camera* hearing imposes unfairness on the defense, as only the defense can determine what will be material and helpful to its case. *See Alderman v. United States,* 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176.

The People urge that appellant suffered no prejudice, as he could have called Buckley to the stand. Then, if Buckley were impeached by his post-accident statement, he could explain he was under sedation at the time.

■ This argument misses the mark. The thrust of our discovery rules is to discourage legal games of "blindman's bluff." It is speculative to now suggest what the defense might have done had it been faced with impeachment. Appellant's counsel should have been given a fair opportunity to review the statement prior to trial, so that he could make an intelligent judgment relative to calling Buckley to the stand.

The judgment is reversed and the cause remanded with directions to grant appellant a new trial.