## No. C-886

## The People of the State of Colorado v. Chilton Eulane Hedrick

(557 P.2d 378)

Decided October 25, 1976.                    Rehearing denied November 15, 1976.

Nolan L. Brown, District Attorney, Robert G. Same, Deputy, L. Gary Hebenstreit, Deputy, for petitioner.

Berger & Rothstein, P.C., Lawrence B. Leff, for respondent.

*En Banc.*

MR. JUSTICE DAY* delivered the opinion of the Court.

Certiorari to the district court of Jefferson County to review a ruling concerning the constitutionality of the Colorado statute and Department of Health rules and regulations dealing with the Implied Consent Law, section 42-4-1202, C.R.S. 1973.

At a hearing in the Jefferson county court, defendant's motion to suppress the results of a breath test was granted. The court held that defendant wrongfully had been denied an opportunity to secure an independent test of the breath sample. On appeal by the district attorney, the Jefferson County district court affirmed the ruling, holding that the failure to preserve the breath sample was a denial of due process. We reverse.

Defendant was stopped by an Arvada police officer, arrested, and charged with driving under the influence of intoxicating liquor, in violation of section 42-4-1202(1)(a), C.R.S. 1973. Defendant elected to take a breath test. Nearly three months later, he made a motion to produce the breath sample, alleging that such evidence was vital to the preparation of a proper defense. This motion requested that in the event the prosecution was unable to produce the sample, all evidence and testimony derived therefrom be suppressed. The district attorney did not produce the

---

* Retired Supreme Court Justice sitting under assignment of the Chief Justice under provisions of Article VI, Section 5(3) of the constitution of Colorado.

requested breath sample, and a suppression hearing was held. Neither defendant nor the prosecution presented any evidence of the type of machine used in administering the test. The only testimony was from the defendant, who stated he had freely chosen the breath test and testified, *inter alia*: "Well, I don't feel 1.28 [sic] was under the influence. I don't feel like I was under the influence, so I don't think the test was right."

## I.

The option of tests offered to defendant was made pursuant to the statute, the relevant section of which reads, as follows:

"(3)(a) Any person who drives any motor vehicle upon a public highway in this state shall be deemed to have given his consent to a chemical test of his breath, blood, or urine for the purpose of determining alcoholic content of his blood, if arrested for any misdemeanor offense arising out of acts alleged to have been committed while the person was driving a motor vehicle while under the influence of, or impaired by, alcohol. If such person requests that the said chemical test be a blood test, then the test shall be of his blood but, if such person requests that a specimen of his blood not be drawn, then a specimen of his breath or urine shall be obtained and tested, the election to be made by the arresting officer."

It can be seen from the statute that the people have no duty to give the defendant any chemical test. This court held in *People v. Culp*, 189 Colo. 76, 537 P.2d 746 (1975), that "due process principles do not require the State to offer a chemical test to the defendant." This court quoted from *State v. Reyna*, 92 Idaho 669, 674, 448 P.2d 762, 767 (1968):

"'To hold otherwise would be to transform the accused's right to due process into a power to compel the State to gather in the accused's behalf what might be exculpatory evidence. In this case, the State produced testimonial evidence of intoxication, but it had no obligation to obtain for appellant what he speculates might have been more scientific evidence of sobriety. The state may not suppress evidence, but it need not gather evidence for the accused.'"

Pursuant to section 42-4-1202(3)(b), C.R.S. 1973, the Colorado Department of Health issued rules and regulations relating to chemical tests for alcohol in the blood in compliance with the Implied Consent Law. The rules and regulations govern the securing of specimens of blood, urine, and breath and the subsequent testing and analyzing thereof. Regarding blood samples, the rules mandate preservation in such a manner that the "chain of evidence" may be preserved, Sec. I(A)(1)(a), and that a "second tube of blood . . . be retained in storage . . . for a period of not less than one year for further studies if needed." Sec. I(A)(1)(b). Regarding samples of urine, the rules mandate the same "chain of evidence" method of preservation and storage. Sec. I(A)(2). The section referring to breath samples reads as follows: "Breath samples shall be appropriately collected for

testing in mechanical devices in facilities approved by the Colorado Department of Health." Sec. I(A)(3). The prescribed test method for breath specimens is set forth in Section II(A):

"Breath specimens shall be analyzed in mechanical devices in accordance with the manufacturer's instructions and operations manual, and in accordance with such special instructions as may be issued by the Colorado Department of Health. Each and every breath testing instrument shall be inspected and performance evaluated annually by the Colorado Department of Health."

■ If the test given to a defendant indicates that at such time there was 0.10 percent or more by weight of alcohol in his blood, there arises a statutory presumption that he was under the influence of alcohol. Section 42-4-1202(2)(c), C.R.S. 1973. This presumption specifically does not limit the introduction, reception, or consideration of other competent evidence bearing upon the the question of whether or not a defendant was under the influence of intoxicating liquor. Section 42-4-1202(2)(d).

II.

The defendant argues that, since there is a requirement to retain blood and urine samples by the rules and regulations prescribed by the Colorado Board of Health, a breath sample should also be retained, as a matter of law, for subsequent independent testing by the defendant. He argues that a failure to do so is a denial of due process. The trial court's adoption of this argument was error.

■ The constitutional guarantees of due process of law operate only to prohibit the deprivation of such rights as exist by substantive law. *Faber v. State*, 143 Colo. 240, 353 P.2d 609 (1960).

■ There are no Colorado statutes which require that two samples be taken or that a sample be preserved. The defendant has not shown that any such law exists or that any right has been violated with respect to any substantive law. In fact, there is no duty on the State to give to the defendant any more than the *results* of the test. Subsection (3)(g) of section 42-4-1202 provides:

"Upon the request of any person submitting to a chemical test pursuant to this subsection (3) or his attorney, the result of such test shall be made available to him forthwith."

The regulation of the board of health — outside of those designed to prevent injury to and to preserve the health of the individual — are designed for internal operating procedure and not for the defendant.

■ The person's right to the preserved samples stems from the rule stating that it is a denial of due process to deny the defendant evidence in possession of the prosecution. The test of denial of due process was set forth in *Moore v. Illinois*, 408 U.S. 786, 92 S.Ct. 2562, 33 L.Ed. 706 (1972), which interpreted *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). It asks the questions: 1) whether the

evidence was suppressed by the prosecution after a request by the defense; 2) whether the evidence is favorable to the defense, *i.e.*, exculpatory in nature; and 3) whether the evidence is material.

This test has been further clarified and supported in *Evans v. Janing,* 489 F.2d 470 (8th Cir. 1973), and *Ogden v. Wolff,* 522 F.2d 816 (8th Cir. 1975).

The defendant in 'the case at bar has failed to meet any of the three prongs of the test, all three of which must be met in order to support an argument that there has been a denial of due process.

The first factor to be considered is whether there has been a suppression of evidence by the prosecution and, if so, whether such suppression took place after a request by the defense for the evidence.

There was no evidence here that the test as given could have been preserved. The request for a breath sample was first made through the defendant's "Motion to Produce," many months after the defendant was arrested and the breath test taken.

There is no claim that the alleged failure to have a sample available was deliberate. In *Reyna, supra,* we find:

"[A]ppellant cites *Thomas v. United States,* [343 F.2d 49 (9th Cir. 1965)] for the well-recognized rule 'that a conviction cannot stand where a prosecutor has, either wilfully or negligently, withheld material evidence favorable to the defendant.' The Court here reaffirmed the rule that the prosecutor must disclose all material evidence 'in his possession' and proceeded to find no 'concealment' or 'suppression' of evidence. But the prosecution cannot be said to conceal evidence it does not possess or control."

Herein there simply was no evidence in this record that there was suppression or non-disclosure of evidence by the prosecution and we therefore do not reach to the other factors.

### III.

Defendant has placed reliance in this appeal upon two recent decisions dealing with the destruction of ampoules containing breath samples. One of these cases is *People v. Hitch,* 11 Cal. 3d 159, 520 P.2d 974, 113 Cal. Rptr. 158 (1974), and the second decision is *Lauderdale v. State,* 548 P.2d 376 (Alaska 1976). Whatever the rule may be in *Hitch* and *Lauderdale* we prefer to follow the rule in *State v. Reyna, supra.*

Besides a complete lack of evidence herein regarding the type of machine used in the test on the defendant, there was no testimony that the test did or did not comply with the Health Department's standards. Under such conditions, we are not disposed to assume that the test was wrong or that a new test would show that defendant's blood-alcohol level was below that statutorily presumed to indicate intoxication. *Accord State v. Hockings,* 542 P.2d 133 (Or. App. 1975).

## IV.

■ The testimony concerning the machine used in the breath test is not unlike that which has been approved in the now widespread use of radar in testing speed. At trial, the prosecution must make a prima facie showing that the machine had been tested as provided by the manufacturer's specifications, that it was operating correctly, was used in the required manner, and that the results were accurate. Fundamental fairness to the defendant and the requirements of due process can be satisfied by the defendant's verification of reliability and the accuracy of the machine used and the operator involved.

The defendant has an opportunity at a trial to: cross-examine the operator of the machine used; cross-examine the expert witnesses testifying regarding the principles and operation of the machine; cross-examine concerning any documents or evidence introduced in support of the test results and the accuracy of the machine; cross-examine concerning any documents or officials from the Colorado Department of Health who certified the machine; examine the machine itself; examine all witnesses and documents in his case; and examine the experts regarding the principles and operation of the machine used.

Thus the question of the credibility of the evidence is properly before the jury as in other questions not going to admissibility but to the weight of the evidence.

■ In summary, where there is a failure, as here, to prove that the evidence is preservable or that there was any prejudice to defendant by failure to have available to him a breath sample, we must hold that the wider interests of society favor the admissibility of the test results at trial. Under such circumstances, "trials should proceed in reliance upon that evidence which exists, rather than be barred because some evidence is not available." *State v. Jones*, 18 Or. App. 343, 525 P.2d 194 (1974).

The ruling is reversed and the cause remanded to the district court for remand to the county court to vacate its order to suppress the results of the breath test, proceedings thereafter to be consonant with the views expressed herein.

MR. JUSTICE GROVES and MR. JUSTICE ERICKSON dissent.

MR. JUSTICE CARRIGAN does not participate.


MR. JUSTICE GROVES dissenting:

I respectfully dissent. In doing so, I apply my views only to the irrelevancy of good or bad faith in preservation of *breath samples*, and not to other situations in which this court has already ruled or may rule in the future. My opinion is as expressed in *Lauderdale v. State*, 548 P.2d 376 (Alaska 1976) as follows:

"As to the due process argument, Lauderdale points to the following statement of the United States Supreme Court in *Brady v. Maryland*:

"[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.

"The difficulty with reliance on that statement is that the Supreme Court was speaking of evidence 'favorable' to the accused. Here, we have no idea as to whether the evidence sought, that is, the ampoules, would be favorable to the accused or not, and this could not be known until a scientific study and analysis of the ampoules had been made.

"But Lauderdale's point as to due process is well taken. He is asking for an opportunity to test the reliability or 'credibility' of the breathalyzer test results. This is closely analagous, if not equivalent, to the case where defense counsel, by cross-examination, tests the credibility of a witness who testifies against an accused. Cross-examination in such a case is a matter of right, and the purpose of that right is to attempt to bring out facts which will tend to discredit the witness by showing that his testimony was untrue.

"It does not matter that defense counsel cannot know in advance what pertinent facts may be brought out in cross-examination. . . ."
* * *

"The state found it impossible to produce the ampoules, probably because the test ampoule, if not also the reference ampoule, was destroyed after the test was made in keeping with routine police procedures. The good or bad faith of the state in not being able to produce the evidence is of no import. Criminal Rule 16(b)(7) contemplates discovery by an accused of relevant material that possesses materiality to the preparation of the defense. As we have stated, the ampoules were relevant and material because they were an essential part of the breathalyzer test which gives rise under the statute to a presumption of intoxication depending upon the results of the test. The existence of the rule was notice to the state that such evidence might be the object of discovery, and therefore should be preserved for a reasonable length of time. The state's duty of preservation was as operative as the duty of disclosure.

"The state speaks of 'serious difficulties' and 'tremendous efforts' in adopting procedures to preserve the ampoules. We are not convinced by this argument. We are certain that the state, with all of its vast human resources, will be able to find suitable methods to preserve the ampoules for later scientific analysis when discovery is sought by a defendant under Criminal Rule 16."

MR. JUSTICE ERICKSON concurs in this dissent.

MR. JUSTICE ERICKSON dissenting:

I respectfully dissent. The thrust of our discovery rules is to discourage blind man's bluff and to make the search for truth meaningful. *See People v. Smith*, 185 Colo. 369, 524 P.2d 607 (1974).

The breathalyzer sample falls within the range of discovery permitted by Crim. P. 16(a)(4). By even the strictest standards, this specifically requested evidence was relevant and material in a constitutional sense. *See United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976); *Giles v. Maryland*, 386 U.S. 66, 87 S.Ct. 793, 17 L.Ed.2d 737 (1967); *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). This evidence creates a presumption of intoxication under our statute. Section 42-4-1202(2), C.R.S. 1973. *See also State v. Teare*, 129 N.J.Sup. 562, 324 A.2d 131 (1974).

The issue here is not police misconduct. It is more fundamental. Failure of the prosecution to produce a sample of the evidence for testing purposes denies the defendant the opportunity to independently examine the physical evidence which incriminates him. In my opinion, to deny discovery is to deny a fair trial and constitutes a deprivation of due process of law. *See United States v. Agurs, supra; Giles v. Maryland, supra; Brady v. Maryland, supra.*

The issue here is whether, once the state has elected to give a test, the defendant should have an opportunity to independently examine the same physical evidence which the prosecution offers to incriminate him. Denial of the opportunity, especially where the evidence is not necessarily consumed by police testing, is a denial of due process. *See Lauderdale v. State*, 548 P.2d 376 (Alaska 1976); *People v. Hitch*, 12 Cal.3d 641, 527 P.2d 361, 117 Cal.Rptr. 9 (1974).

The authorities uniformly recognize that the various forms of the breathalyzer test are in many ways the least accurate of the three tests permitted by our statute. *See, e.g.,* Mason and Dubowski, *Breath-Alcohol Analysis: Uses, Methods, and Some Forensic Problems — Review and Opinion*, 21 Journal of Forensic Sciences 9 (1976); R. Ervin, *Defense of Drunk Driving Cases*, ch. 18 (1974 and Supp. 1976); *cf.,* Watts, *Some Observations on Police-Administered Tests for Intoxication*, in P.L.I., *Drunk Driving Cases: Prosecution and Defense* (1970). Moreover, the literature in the field of forensic science demonstrates that the development of reliable and inexpensive techniques and devices which allow the preservation of breath samples is an accomplished fact.

The defendant established a *prima facie* case of a denial of due process by a request for the sample and the concession by the prosecution that no sample had been preserved. In a suppression hearing under Colorado law, the burden of proving compliance with constitutional requirements is on the prosecution. *See, e.g., Mora v. People*, 178 Colo. 279, 496 P.2d

1045 (1972); *People v. LaRacco,* 178 Colo. 196, 496 P.2d 314 (1972); *People v. Moreno,* 176 Colo. 488, 491 P.2d 575 (1971); *People v. Chacon,* 177 Colo. 368, 494 P.2d 79 (1972); *People v. Ware,* 174 Colo. 419, 484 P.2d 103 (1971); *see also People v. Cram,* 180 Colo. 418, 505 P.2d 1299 (1973). The majority opinion departs, without benefit of citation, from this well-established principle. The majority opinion places the burden of proof upon the defendant by explicitly penalizing the defendant for the failure to produce evidence that the sample taken by the prosecution was preservable.

The prosecution has the duty to make earnest efforts to preserve samples of incriminating evidence. *See People v. Hitch, supra; United States v. Bryant,* 439 F.2d 642 (D.C. App. 1971). No showing of earnest effort was made. By leaving the option of an unimpeachable breath sample open to the state, the defendant is denied the opportunity to effectively examine the most crucial evidence against him. He is left only with the naked results of the test. This violates both the spirit and the letter of discovery and fundamental fairness.

Accordingly, I would sustain the trial court's ruling and dismiss the charges against the defendant because of a denial of due process.

MR. JUSTICE GROVES joins me in this dissent.