578 P.2d 666 (1978)
The PEOPLE of the State of Colorado, Plaintiff-Appellee,
v.
Glenn Eugene EDGAR, Defendant-Appellant.
No. 77-178.
Colorado Court of Appeals, Division I.
February 9, 1978.
Rehearing Denied March 9, 1978.
Certiorari Denied May 15, 1978.
J. D. MacFarlane, Atty. Gen., David W. Robbins, Deputy Atty. Gen., Edward G. Donovan, Sol. Gen., James S. Russell, Asst. Atty. Gen., Denver, for plaintiff-appellee.
DiManna, Eklund, Ciancio & Jackson, Michael F. DiManna, Gene A. Ciancio, Denver, for defendant-appellant.
STERNBERG, Judge.
Defendant Glenn Eugene Edgar was convicted by a jury of first and third degree arson and conspiracy. Because we find reversible error with respect to one of his several contentions of error, we reverse and remand for a new trial.
Edgar, his wife and her parents owned a Greeley restaurant and lounge which Edgar managed. In the early morning hours of December 22, 1975, the building was damaged by fire. It was undisputed that the cause of the fire was arson because, among other things, at least 27 separate fires caused the damage. The dispute at the trial was whether Edgar was one of those involved in the arson.
The People's theory of the case was that because of financial problems he was having, Edgar tried to burn down the building to collect insurance money. One Adkins, who worked for Edgar as a musician, testified that Edgar asked him if he knew anyone who would set the fire. Adkins recommended a long-time friend, Owen, saying that, "He would do about anything for enough money." Adkins testified that he arranged for Owen to come to Greeley and that Edgar agreed to and did pay money to Owen to set the fire.
On the other hand, Edgar's theory of the case was that Adkins and Owen had burned *667 the building without his knowledge or consent. Edgar contended that because he had complained to Adkins that the latter's music was deteriorating and had told him that his New Year's Eve performance would be his last, Adkins alone had hired Owen to burn the building.
Adkins, Owen and Edgar were charged with the crime. Adkins pled guilty in exchange for a deferred sentence and testified against Edgar. Owen did not testify, and his trial was set for a later date.
Edgar seeks reversal because the trial court granted neither his motion to suppress testimony of the People's witnesses Dykes and Tognari and evidence consisting of two Western Union money orders, nor alternatively, his motion for a continuance. In order to facilitate an understanding of this contention, it is necessary to set forth in some detail the chronology of events relating to discovery.
The trial in this case was set for January 24, 1977, and, pursuant to Edgar's motions under Crim.P. 16, the People were ordered to disclose by November 1, 1976, names and addresses of prospective witnesses, together with summaries of their testimony. When the People did not meet this deadline Edgar's counsel moved to force compliance with the order. Following a hearing on December 22, 1976, the date for compliance was extended to January 6, 1977, 18 days prior to the trial date. On January 6, the People partially complied when they endorsed 72 additional witnesses, but no summaries of testimony or copies of written or recorded statements were provided. The California addresses of witnesses Dykes and Tognari were listed by city only and turned out to be incorrect. Also, Tognari had since married, taking a different name. On January 6, 1977, the court extended the time for compliance with its order to January 14, 1977.
On January 14, having received nothing further from the People, Edgar's counsel telephoned the district attorney and asked whether any other materials were to be made available to him. He was told that a packet was being mailed that day. On January 17, the promised packet not having arrived, defense counsel again called the district attorney and in response to that call, some material was hand-delivered that day. The district attorney called defense counsel on January 18 and agreed to meet with him on January 19. That meeting was delayed until January 20 at the district attorney's request, when he made his file available for inspection, but a tape recording of the most recent conversation with witness Tognari was not included. According to the People's representative, that conversation contained statements at variance with those on other recordings that had been provided. On the missing tape Tognari indicated for the first time that she could testify about a direct contact between Edgar and Owen. At the conclusion of that conference on January 20 defense counsel prepared and mailed a motion to exclude Tognari's testimony or, in the alternative, to continue the trial because of non-compliance with the discovery order.
The trial was scheduled to start on January 24, 1977. At that time, prior to jury selection, the court heard Edgar's January 20 motion. It was denied, but the court did grant a companion motion to suppress evidence of Edgar's home telephone records because of failure to comply with the discovery deadline. The jury was selected on that day and on January 25, 1977, prior to opening statements, Edgar moved to suppress Dykes' testimony because he had been given neither a summary of it nor an opportunity to interview him. Dykes' testimony tended to show that Edgar had knowledge of Western Union money orders sent by Adkins to Owen. Edgar also moved to suppress the Western Union money orders which had been subpoenaed on January 19 but were not made available until the commencement of the trial. When these motions were denied, Edgar again moved for a continuance and again the motion was denied.
By the adoption of pretrial discovery rules, "[t]he cloak of secrecy has been removed from the criminal justice process...," because "[t]rial by ambush, or *668 the old fox-and-hounds approach to litigation, does not promote accuracy or efficiency in the search for truth." People v. District Court, 187 Colo. 333, 531 P.2d 626 (1975). The record in this case shows that defense counsel complied in all respects and in good time with the discovery order concerning Edgar, and provided not only a list of witnesses, but also their names and addresses, together with a brief reference to the nature of their testimony.
On the other hand, the People made no effort to follow the order to disclose witnesses by November 1, 1976, and did not comply even when given an additional 66 days. We do not view either the submission of a bare list of 72 names 18 days prior to trial, or opening of the district attorney's incomplete file four days before trial as complying with the court's order. Our review of the record leads us to conclude that the actions of the prosecution with respect to discovery constituted prosecutorial misconduct, see People v. Smith, 185 Colo. 369, 524 P.2d 607 (1974), and amounted to the denial of a fair trial. Cf. People v. Reynolds, Colo., 575 P.2d 1286 (announced February 6, 1978).
Nevertheless, the People assert that because Edgar cannot prove he was prejudiced by the trial court's refusal to grant a continuance, the error, if any, does not require reversal. We do not agree.
In People v. Smith, supra, after pointing out that "[t]he thrust of our discovery rules is to discourage legal games of `blindman's bluff,'" the court dismissed a similar argument as "missing its mark" and declined to speculate on what the defendant might have done had the prosecution complied with the discovery order because "the determination of usefulness of evidence in this context is a defense function ...." Similarly, we will not engage in such speculation here because of the massive non-compliance involved. We are not dealing in this case, for instance, with a technical, good faith failure to endorse a witness whose testimony was no surprise to the defendant, see People v. Zallar, Colo., 553 P.2d 756 (1976), where such non-compliance with a discovery order was considered to be non-prejudicial. Providing a bare list of 72 names 18 days before trial, and then fleshing out this skeletal compliance with the discovery order at the last minute could not help but have such a deleterious effect on defense counsel's ability to prepare his case that his effectiveness in representing defendant at trial would be lessened. Under these circumstances, we hold that it was error for the trial court not to have granted the motion for a continuance to allow counsel the opportunity to prepare for trial.
Edgar's other contentions of error are either without merit, or are not treated because they are unlikely to arise on retrial of this case.
Judgment reversed and cause remanded for a new trial.
COYTE and RULAND, JJ., concur.