**The PEOPLE of the State of Colorado, Plaintiff-Appellee,**

v.

**Alfred MADSON, Defendant-Appellant.**

**No. 82CA0922.**

Colorado Court of Appeals, Div. II.

March 15, 1984.

Rehearing Denied April 12, 1984.

Certiorari Denied Oct. 9, 1984.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., John Daniel Dailey, Chief, Crim. Appeals, Denver, for plaintiff-appellee.

Mitchell & Mitchell, P.C., Rexford L. Mitchell, Michael T. Mitchell, Rocky Ford, for defendant-appellant.

SMITH, Judge.

Geneva Van Hee was found dead in the passenger's seat of her car on December 26, 1977. She died as a result of a single bullet wound to the head. Alfred Madson was charged and convicted by a jury of murder in the first degree. He appeals and we affirm.

This case has twice previously been the subject of appeal. *People v. Madson,* 196 Colo. 507, 586 P.2d 1338 (1978) (interlocutory appeal from suppression order—Madson I); *People v. Madson,* 638 P.2d 18 (Colo. 1981) (conviction reversed and re-trial ordered—Madson II). To the facts stated in the previous cases, we add only those additional facts necessary to our decision here.

## I.

Defendant's first contention is that he was detained in violation of his Fourth Amendment rights and that, therefore, all evidence obtained during the period of his alleged illegal detention should be suppressed. We disagree.

Defendant filed a motion to suppress statements and evidence seized by police officers from him on December 26, 1977. *See Madson II, supra.* He claims that he was unconstitutionally detained and that therefore the statements he made, and the evidence which was subsequently seized by the police on that date should not have been admitted into evidence against him at his trial.

A suppression hearing was held on March 18, 1982, during which the trial court took judicial notice of the transcript of the previous suppression hearing held from July 31, 1978, through August 3, 1978. Further argument was heard at that time.

The trial court found that at 5:30 p.m. five police officers went to defendant's apartment to question him concerning the death of Geneva Van Hee. The People concede that at that time they lacked probable cause to arrest defendant.

Two of the officers were in uniform; the other officers were in street clothes. The

uniformed officers accompanied the plain-clothes officers because of the possibility, the crime being murder, that defendant might be armed. The trial court found that the two uniformed officers stationed themselves near the entrance to the common hallway and out of sight of the defendant's apartment door. The plainclothes officers then knocked on the defendant's door and identified themselves as policemen. Sergeant Bell, who was in charge of the investigation, advised defendant when he opened the door that they were investigating the death of Geneva Van Hee, and that he (defendant) need not permit their entry into the apartment. Defendant then invited the officers into his apartment.

A "consent to search" form was offered by Sergeant Bell to the defendant, and was signed by him. The trial court found that before signing the form, defendant was expressly told several times that he need not consent to the search. Nevertheless, he signed the consent.

Officer Bell then proceeded to advise the defendant of his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Certain incriminating statements were thereafter made to the police as they searched the defendant's apartment.

Once the search was completed, Officer Bell asked the defendant if he would like to accompany the officers to the local sheriff's department and then to the police department in La Junta, Colorado, for further discussions. The defendant agreed. The trial court found that, despite the fact that the defendant was told at least once, "if not numerous times," that he was free to decline the officer's request to accompany them, the defendant chose voluntarily to go with the officers.

The defendant was offered the choice of taking his own automobile or riding with the police in a police vehicle to the sheriff's office. The defendant elected to ride in the front seat of the police vehicle to the sheriff's office. At the sheriff's office the defendant was, with his consent, fingerprinted and again was told that he did not have to go with the officers to the police department in La Junta. Nonetheless, he agreed to go.

At the police department the defendant answered questions concerning his shoes, whereupon the shoes were taken into custody by Sergeant Bell. This seizure was upheld by the Supreme Court in *Madson I.* The ruling relative to that seizure we consider to be the "law of the case." *See People v. Roybal*, 672 P.2d 1003 (Colo. 1983).

The defendant thereafter suggested that he would like to speak with an attorney, whereupon all questioning ceased. A telephone was made available to him, and he was again told that he was free to leave and that he was not under arrest. Defendant thereupon indicated his desire to leave and he was driven to his home by the officers.

The question of whether defendant's statements made during this period of time should be suppressed, as being the product of an arrest or seizure without a warrant or without the existence of probable cause to arrest, turns on the issue of whether there was, in fact, an arrest or seizure in the constitutional sense. Our Supreme Court has said in *People v. Pancoast*, 659 P.2d 1348 (Colo.1982):

> "Admittedly, when a police officer accosts an individual and restrains his freedom to walk away, he has 'seized' that person in a constitutional sense.... It does not follow, however, that every personal confrontation between a police officer and a citizen, which results in some form of interrogation directed to the citizen, necessarily involves a 'seizure' of the person.... 'Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of the citizen may [a court] conclude that 'a seizure' has occurred.'"

■ The test for determining if a seizure has occurred is whether in view of all the circumstances a reasonable person would have believed that he was not free to leave. *U.S. v. Mendenhall*, 446 U.S. 544, 100 S.Ct.

1870, 64 L.Ed.2d 497 (1980); *People v. Johnson*, 671 P.2d 958 (Colo.1983); *People v. Pancoast, supra; see also People v. Bookman*, 646 P.2d 924 (Colo.1982).

The trial court, in addressing this issue, found that the defendant's freedom of movement was not restrained by physical force or show of authority. It found that he was free to disregard the questions and requests of the officers and terminate at will the contact between himself and the authorities. There was no display of weapons, no physical touching of the defendant's person, no use of language or tone of voice indicating that compliance with the officers' requests might be compelled. There was a total lack of threat, force, or coercion. Requests were uniformly made of the defendant and not demands. Each request was preceded by, or immediately followed by, an explanation that the defendant need not comply with the request.

In conclusion, it found that:

"[T]he evidence reflects that at all times during face-to-face contact between the defendant with any of the police officers, the demeanor of the officers was low key, quiet, considerate, and polite. The demeanor of the defendant at all times, until he terminated the contact was cooperative and nonargumentative."

The trial court, citing *Oregon v. Mathiason*, 429 U.S. 492, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977), then concluded:

"[A]s a matter of law ... a reasonable man would not believe that he was deprived of his freedom of movement in any significant way and that the defendant believed that he was free at any time to depart the presence of the police officer or officers then present. In fact, at the instance [sic] of the defendant he did leave the police station, not only without hindrance, but with the assistance of the authorities."

■ The 'trial court's findings of fact justified its conclusion that defendant was not arrested or seized in the constitutional sense, and our own independent review of the entire record shows ample support for the trial court's findings. *See Beckwith v.*

*United States*, 425 U.S. 341, 96 S.Ct. 1612, 48 L.Ed.2d 1 (1976). Hence, there was no error in the trial court's refusal to suppress the statements and other evidence obtained from the defendant during this period.

## II.

Defendant next argues that the trial court erred in denying his motion to suppress the results of a test which was performed on a spot, or stain, believed to be blood, found upon his shoe. Because the spot was destroyed in the testing process, the defendant did not have an opportunity to test it independently. He argues that, as a matter of due process, the test results should have been suppressed in compliance with the rule announced in *People v. Garries*, 645 P.2d 1306 (Colo.1982), which he argues should be applied retroactively. We do not reach the retroactivity question because we find *Garries* to be inapplicable to the case at bar.

During his questioning at the police station, defendant admitted that he was wearing the same shoes that he had been wearing on the night of the murder, and conceded that the stain or spot on one of them was probably blood. It was this colloquy which lead to confiscation of the shoes. They were sent to the laboratory at the Colorado Bureau of Investigation where the tests were performed. Testimony from the People's witnesses adduced at trial disclosed that because of the small amount of material in the spot, all that could be determined was that it was human blood. It was testified that, for the same reason, the entire spot was virtually destroyed in the testing process.

The right of a defendant independently to test evidence had its genesis in the case of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). The question of whether destructive testing of evidence violates the due process rights referred to in *Brady v. Maryland, supra*, was dealt with by the Colorado Supreme Court in *People v. Hedrick*, 192 Colo. 37, 557 P.2d 378 (1976).

■ Whether evidence resulting from such destructive testing should be suppressed depends upon the existence of three factors: (1) That the destructive testing occurred without giving the defendant either an opportunity to participate in the testing process or without making available to the defendant, upon his request, a portion of the sample, in order that he might perform his own tests; (2) that defendant is able to demonstrate that the evidence he sought to produce as a result of the testing process would be favorable to his case; and (3) that such evidence would be material and admissible. *People ex rel. Gallagher v. District Court,* 656 P.2d 1287 (Colo. 1983). Only if all three factors are present is there a due process violation. *People v. Hedrick, supra.*

■ In order to establish the existence of the second factor, the defendant must demonstrate "the reasonable possibility that the evidence would have been of assistance to the defense." *People v. Morgan,* 199 Colo. 237, 606 P.2d 1296 (1980); *People ex rel. Gallagher v. District Court, supra.* This he has not done.

Defendant's theory in this regard is that the blood spot or stain on his shoe should have been tested for the presence of alcohol. He argues that because the victim had been drinking heavily, prior to the murder, the amount of alcohol in her blood would have assisted in determining the time of death, or alternatively, the non-existence of alcohol in the blood stain might have demonstrated that the blood was not indeed that of the victim.

■ The trial court properly concluded that the burden was upon the defendant to show, relative to this assertion, that the testing procedures available at the time could have established the existence or non-existence of alcohol residue in the dried blood spot or stain. *See Garcia v. District Court,* 197 Colo. 38, 589 P.2d 924 (1979).

In *Garcia,* the court recognized the need for such a rule when it distinguished its ruling that suppression was not required in *People v. Hedrick, supra,* by stating that, in that case:

"[T]here was no evidence to show that the products of the breath test could have been preserved for later use and for separate testing by the defense. [But as to cases before it] there was ample evidence to reflect that the state of the art is such that samples of defendant's breath, taken at the time a blood alcohol breath test is given, can be preserved...."

Here, as in *Hedrick, supra,* there was no evidence at all to show that the state of the art at the time of testing was such that alcohol could be found in a small spot or stain of blood, or that even if the spot had been preserved, it could have yielded any scientifically meaningful test results as to alcohol content, nor is there any evidence in the record to show that such a test was ever possible.

At the time of the second trial, some years later, the only evidence adduced relative to this testing was that produced by the prosecution's expert in forensic seriology who testified that the "most" she could determine was that the spot or stain was indeed blood, and that it was in fact human blood. The expert's attempts to determine blood type were unsuccessful and inconclusive. She testified that in order to perform even the most basic tests it was necessary for her to remove virtually all of the spot from the shoe. The prosecution's expert was not questioned concerning the feasibility of any tests which might have determined the presence of alcohol in the blood stain.

■ The prosecution had "no general duty to search out possible exculpatory evidence or to perform tests to determine marginally relevant facts that, with the benefit of hindsight, a defendant might speculate would have been of possible value to support his defense against a criminal charge." *People ex rel. Gallager v. District Court, supra.* We therefore conclude that, since the defendant here has failed to show a reasonable possibility that the testing could have yielded any evidence that could have been of assistance to the defense, *People v. Morgan, supra,* he has

failed to establish a due process of violation or any basis for suppression of the People's evidence relative to the blood stain.

### III.

Defendant asserts that the trial court erred in admitting into evidence a letter he had written to the victim in which he expressed his anger at the victim's dating other men.

At trial, the victim's daughter testified that three days after her mother's death she went through her mother's belongings and found the letter in her mother's apartment. She testified that she had seen the letter around Thanksgiving, and that she had read it at that time after her mother had advised that she had received it from the defendant. The prosecution offered the letter into evidence to show motive and to assist in proving that the defendant deliberated before killing the victim.

Defendant objected to the admissibility of the letter on the grounds that although it may have been relevant and material to his state of mind a month or more prior to the murder, it had no relevancy or materiality to his state of mind at the time the crime was committed. The court overruled the objection and admitted the letter into evidence.

 We perceive no error in the admission of this letter. Proof of deliberation may stem from evidence of enmity, hostility, jealousy, or other manifestations of ill will between the accused and the victim. *People v. Gladney*, 194 Colo. 68, 570 P.2d 231 (1977), *cert. denied*, 434 U.S. 1038, 98 S.Ct. 776, 54 L.Ed.2d 787 (1978). Here the letter's contents revealed, in the words of the trial court, "pronounced hostility and jealousy consistent with an underlying resentment over the victim's dating of other men." The remoteness in time in this case can affect only the weight the jury should give to the letter and not its relevancy or materiality. *People v. Gladney, supra.*

### IV.

The defendant next asserts that the evidence was insufficient to sustain his conviction of first degree murder. He argues that the evidence was insufficient to support a finding by the jury, first, that he killed the victim, and second, that he had the requisite *mens rea* required by our first degree murder statute.

 A conviction is sustainable if the relevant evidence, both direct and circumstantial, when viewed as a whole and in the light most favorable to the prosecution, is substantial and sufficient to support a conclusion by a reasonable mind that defendant is guilty of the charge beyond a reasonable doubt. *People v. Brassfield*, 652 P.2d 588 (Colo.1982); *People v. Bennett*, 183 Colo. 125, 515 P.2d 466 (1973). In applying this test, the prosecution is to be given the benefit of every reasonable inference which might be fairly drawn from the evidence. *People v. Downer*, 192 Colo. 264, 557 P.2d 835 (1976).

 Although the evidence against the defendant is largely circumstantial, a review of the record reveals ample evidence upon which reasonable minds could reach the conclusion that the defendant was guilty beyond a reasonable doubt.

Judgment affirmed.

VAN CISE and KELLY, JJ., concur.