**R. Milo GILBERT, Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

**No. 19060.**

United States Court of Appeals
Ninth Circuit.

April 5, 1966.

Rehearing Denied May 13, 1966.

Edward L. Lascher, Van Nuys, Cal.,
for appellant.

Manuel L. Real, U. S. Atty., John K.
Van de Kamp, Asst. U. S. Atty., Chief,

Crim. Div., J. Brin Schulman, Asst. U. S. Atty., Asst. Chief, Crim. Div., Los Angeles, Cal., for appellee.

Before BARNES and KOELSCH, Circuit Judges, and MATHES, District Judge.

KOELSCH, Circuit Judge.

This case is here for the second time. Part of its background and general nature appears from this succinct statement contained in the Supreme Court's opinion in Gilbert v. United States, 370 U.S. 650, 82 S.Ct. 1399, 8 L.Ed.2d 750 (1962): "Petitioner" (i. e., appellant Gilbert), "an accountant whose business included acting for others in federal income tax matters, was charged in a thirty-five-count indictment with violations of 26 U.S.C. § 7206(2), 18 U.S.C. § 1001 and 18 U.S.C. § 495, in that he had allegedly falsified his clients' returns (§ 7206(2)), forged their endorsements on government tax-refund checks (§ 495), and, by endorsing such checks, had made false statements as to a matter within the jurisdiction of a government agency (§ 1001). The jury convicted on thirty-one counts and acquitted on four others. On appeal, 9 Cir., 291 F.2d 586, 597, the judgment of conviction was set aside as to twenty-nine counts, and a new trial was ordered * * *. The judgment as to the remaining two counts * * *, charging the petitioner with having forged the endorsements * * * on two government refund checks (18 U.S.C. § 495), was affirmed."

The Supreme Court reversed the two forgery counts. On the retrial Gilbert was convicted of twelve § 7206(2) counts and three § 1001 counts. He was acquitted of four charges and the remainder were dismissed. The district court imposed five year sentences on each of the § 1001 convictions and three years on

those for § 7206(2). All sentences were made concurrent. Gilbert has again appealed.

The § 1001 counts each involved single U. S. Treasury checks that were made payable respectively to Fay Matorian, Sam Matorian and Allen S. Frankel. They were issued to refund to the taxpayers' overpayments of federal income taxes. Gilbert came into their possession because the Treasury Department mailed them to his office. After endorsing them with the taxpayer's name "by R. Milo Gilbert, Trustee" he deposited them in the local bank to the credit of his trustee account, and in due course they were forwarded to the Treasury Department and paid. The evidence viewed in a light most favorable to the validity of the conviction established that none of the taxpayers was aware that he was entitled to any such refund or that any such checks would be issued.

Gilbert contends that the record utterly fails to show any false representations because the endorsements were precisely what they purported to be. It is of course true that Gilbert made no pretense that the payees had themselves executed the endorsements, but it does not follow that what he did would not constitute an unlawful representation. On the contrary, his endorsements themselves constituted representations that he was duly authorized to make them.

Gilbert further challenges the implied finding that the representation was false. He concedes that he acted without prior authority in endorsing the checks but he makes the curious argument (1) that afterwards the taxpayers ratified his acts and therefor by virtue of the doctrine of relation back his representation must be deemed to be true and (2) that he became a "tentative" trustee of a tentative (or "Totten") [1] trust by rea-

---

[1]. So called because of the name of the case which first gave such an arrangement judicial approval. Declaring that "[t]he doctrine of 'tentative trusts' created by deposits 'in trust' for some person other than the depositor appears to be settled law in this state," the Supreme

Court of California noted that "[i]n adopting such doctrine, the California decisions have followed the rule formulated in the oft-quoted case of Matter of Totten, 179 N.Y. 112, 71 N.E. 748, at page 752, 70 L.R.A. 711: 'A deposit by one person of his own money in his own name

son of depositing the checks into his trust account and hence had power to make the endorsements.

(1). Even if the evidence conclusively established that the taxpayers, after learning what Gilbert had done, thereupon ratified or approved his acts this would not make his conduct any less criminal. If his acts constituted a criminal offense, what the taxpayers may have done thereafter by way of condonation is totally irrelevant, for the policy of the law is well settled, that a private person may not excuse a criminal act. Seals v. United States, 221 F.2d 243 (8th Cir. 1955); Savitt v. United States, 59 F.2d 541 (3d Cir. 1932); People v. Alba, 46 Cal.App.2d 859, 117 P.2d 63 (1941); 1 WHARTON Cr.L. (1957 ed.) 125 p. 268.

(2). Nor does it follow from the fact Gilbert deposited the checks in a trust account that he possessed the authority to endorse them for deposit. His argument is based on circular reasoning.

Gilbert's point that he should not have been found guilty bcause his statements, even if false, were made to the bank rather than directly to the Department of the Treasury is equally lacking in merit. Section 1001 contains no language that even suggests a false representation must be so directed; in plain terms, it provides that such a representation must be made " * * * in any matter within the jurisdiction of any department or agency of the United States * * *." Our court has held that in keeping with the statute's "vital public purpose of protecting governmental functions from frustration and distortion through deceptive practices * * * it must not be construed as if its object were narrow and technical." Ogden v.

United States, 303 F.2d 724 (9th Cir. 1962). And several circuits have squarely held that the statute does not impose this asserted requirement. Thus, in United States v. Mellon, 96 F.2d 462 (2d Cir. 1938) it was held that an application to a local bank for an F.H.A. insured loan was within the statute. And in Ebeling v. United States, 248 F.2d 429 (8th Cir. 1957) cert. den. sub nom Emerling v. United States, 355 U.S. 907, 78 S.Ct. 334, 2 L.Ed.2d 261 (1957), the Eighth Circuit announced the same conclusion in a situation where the representations consisted of false invoices submitted by a sub-contractor to the prime contractor doing work for the U. S. Department of the Army. There, evidence was adduced tending to show that the accused knew or was chargeable with knowledge that the representation bore a relation to some matter "within the jurisdiction of a department or agency of the United States," in that he knew charges appearing in the invoices were to be reflected in the prime contractor's statement to the government. So here Gilbert certainly was aware that the endorsement of the checks was the first crucial step in their journey to the Treasury Department where they would be ultimately presented for payment. Pereira v. United States, 347 U.S. 1, 74 S.Ct. 358, 98 L.Ed. 435 (1954).

Little need be said in answer to the point that since the checks had already issued Gilbert could not by endorsing them have influenced government action. He was not charged with causing them to issue on false representations, but with falsely representing his authority to endorse them after they were issued.

At the outset of the trial the district attorney, no doubt mindful of the

as trustee for another, standing alone, does not establish an irrevocable trust during the lifetime of the depositor. It is a tentative trust merely, revocable at will, until the depositor dies or completes the gift in his lifetime by some unequivocal act or declaration, such as delivery of the passbook or notice to the beneficiary. In case the depositor dies

before the beneficiary without revocation, or some decisive act or declaration of disaffirmance, the presumption arises that an absolute trust was created as to the balance on hand at the death of the depositor.' * * *" Brucks v. Home Federal Sav. & Loan Ass'n, 36 Cal.2d 845, 228 P.2d 545 at page 548 (1951).

Supreme Court's ruling on the forgery issue (370 U.S. 650, 82 S.Ct. 1399, 8 L.Ed. 2d 750), stated that although he would not press the counts embodying those charges he wanted to retain them for the present. The district judge thereupon denied Gilbert's motion to dismiss, but said that as trier of fact he would "give them absolutely no weight at all as far as the trial is concerned." At the conclusion of all the evidence he dismissed them.

The district attorney's conduct was unusual but hardly such as to constitute misconduct. The important question here, however, is not one of the district attorney's motive, but whether the accused has demonstrated he suffered prejudice in any substantial degree because of that conduct. We think not. Gilbert professes to concede that the joinder of the charges did not "per se" deprive his trial of essential fairness, yet in the same breath and with a complete lack of consistency, he urges "that joinder * * * particularly of admittedly * * * untenable charges * * * for the bold purpose of thereby reinforcing other charges in a denial of the fundamental concepts of ordered justice." The clearest expression of his thesis is that "To a high degree, none of the charges was weighed independently, but rather the 'cumulative guilt' of the appellant in the case as a whole, as a *gestalt*, was the nature of the judgment reached." Certainly, the comments of the trial judge do not bear out Gilbert's assertion. We should point out that all the charges involved closely related matters and that criminal intent was an essential element of those which the district attorney actively pressed. Evidence tending to throw light on this issue of course was thus certainly admissible even though it involved proof of a collateral matter such as the crimes charged in the "inactive" counts. Moreover, Gilbert makes no complaint concerning the court's ruling on the admission of any particular evidence, and we will not presume error.

█ █ *Gilbert is in a poor position to urge lack of proof of venue of the crimes* charged in the § 1001 counts of the indictment. We think he waived such objection. True, he made a motion in the trial court for an acquittal but the ground was specifically limited to the sufficiency of the allegations of the indictment and nowhere in the ensuing argument did he assert venue had not been proved. Neither the case of United States v. Jones, 174 F.2d 746 (7th Cir. 1949), relied upon by Gilbert, nor United States v. Brothman, 191 F.2d 70 (2d Cir. 1951), afforded him any assistance. Both construed Rule 29, Fed.R.Cr.P. to mean that a motion to acquit on the general ground of insufficiency of evidence would serve to preserve a point regarding venue. But the courts were careful to note that the appellant had neither particularized his objection nor been permitted or required to do so and hence waiver could not be presumed.

█ Moreover, Gilbert failed to specify the point as error, as required by Rule 18(2) of this court. It is first mentioned in his reply brief, accompanied by an excuse which amounts to an admission, that he misunderstood the gravamen of the charge. We reject the attempted explanation and reiterate that "Certainly the use of new material in a reply brief transgresses against the canons of fair forensics." Fredrick v. United States, 163 F.2d 536 (9th Cir. 1947), cert. den. 332 U.S. 775, 68 S.Ct. 87, 92 L.Ed. 360 (1947).

█ Out of an abundance of solicitude for the rights of the appellant, we have considered the point under the plain error rule, but have found it baseless. Venue was laid in Los Angeles County, California; it was there that Gilbert deposited in banks to the credit of his trustee account the United States Government checks that bore his false endorsements, and in our opinion it was there that the crimes were committed. See United States v. Gilliland, 312 U.S. 86, 61 S.Ct. 518, 85 L.Ed. 598 (1941); United States v. Mellon, supra. As stated at the beginning of this opinion, all sentences were concurrent and those on the § 1001

counts were of longer duration. The convictions on those counts, being free of error, it would serve no useful purpose to consider Gilbert's attacks on the validity of those remaining. Sinclair v. United States, 279 U.S. 263, 299, 49 S.Ct. 268, 73 L.Ed. 692 (1929); Lawn v. United States, 355 U.S. 339, 359, 78 S.Ct. 311, 2 L.Ed.2d 321 (1958).

The judgment is affirmed.