**UNITED STATES of America,
Plaintiff,**

**v.**

**James Earl PREUIT, Defendant.**

**No. CR 66–37.**

United States District Court
D. Oregon.

Aug. 10, 1966.

Jack G. Collins, First Asst. U. S. Atty., Portland, Or., for plaintiff.

Charles D. Burt, Salem, Or., for defendant.

## OPINION AND FINDINGS

KILKENNY, District Judge:

The Government elected to proceed on Counts VII, II, III and V in the order given. I will dismiss Counts I, IV and VI.

Defendant is prosecuted under 18 U.S.C. § 1001, 18 U.S.C. § 1002 and 18 U.S.C. § 2.

The principal statute is the one which makes it a crime to willfully falsify, conceal or cover up by any tricks, scheme or device a material fact, or to make any false, fictitious or fraudulent statements, or make or use any false writing or document knowing the same to contain false, fictitious or fraudulent statement or entry, in any matter within the jurisdiction of any department or agency of the United States.

Defendant was a duly licensed real estate broker at the time of the offense charged in the indictment and was a partner with one Cooley.

■ It is my belief that the defendant is guilty as charged on each of the counts III, V and VII. The scheme, well known to the defendant, of giving a purchaser-mortgagor a cash credit for the 3% of the amount of the loan from the bank, acting as agent for the FHA, was a deceptive practice. No satisfactory explanation was given by the defendant as to why the price of the property was not reduced by the four hundred or five hundred dollars so-called cash advance payment. Obviously, the purchaser would not be in a position to take advantage of the loan requirements of the FHA if he could not then make the cash down payment. The defendant, of course, was interested in securing his real estate commission and by making this arrangement with the borrower, he could give the borrower credit in his so called trust account, well knowing that when the loan was made he would, in fact, collect his 5% commission, thereby circumventing the rule on such loans that the mortgagor must advance at least 3% in cash.

■■ Defendant is a bright, intelligent man. He says that he believed this scheme was proper, but no place does he indicate that he ever explained this scheme to the financial agent of the FHA, who was responsible for making the loan. On one occasion when he started talking about a painting and repairing credit, the agent was not satisfied and required a paper which would show a cash down payment. The submission of the purchase money receipt, reciting a cash down payment, when in truth and, in fact, no such payment had been made is a sufficient false statement, under all of the evidence on the remaining counts, to find the defendant guilty. Although he may not have submitted those statements himself, he was responsible for his employee submitting such statements and knew that this type of statement was being submitted in each instance. He was aware of the "sweat equity" method of handling the problem, but he obviously avoided this particular method. This procedure was rather difficult to get past the FHA. Under this method a borrower could, under very exacting requirements, work out an arrangement with the FHA whereby he would personally paint or repair the home and this would be treated as the down payment. There is nothing in the applications in these cases to show that defendant was attempting to follow any such procedure. The procedure followed was quite simple. A price was placed on the property, under which the seller would agree that the purchase price might be reduced some four or five hundred dollars in order that the reduction might be treated as a cash down payment required under the 3% rule of the FHA. Defendant had a very definite motive in carrying out this procedure. If he did not do so, the purchasers, with one exception, would not have enough cash to meet the 3% requirement and he would thereby lose his commission. Of particular significance, is the many advertisements mentioned in the newspapers whereby he would offer at least two tracts of the property for sale for a down payment of $100.00. It

was obvious that the defendant knew that these homes were difficult to sell and that an FHA loan would be required. Therefore, a down payment of at least 3% was required, rather than a down payment of $100.00.

■ It is well settled that the purpose of the false claims statute was to protect governmental functions from frustration and distortion, through deceptive practices. Ogden v. United States, 303 F.2d 724 (9th Cir. 1962); Gilbert v. United States, 359 F.2d 285 (9th Cir. 1966). That the cash earnest money requirement was material in satisfying the provisions of the National Housing Act is made clear by 12 U.S.C. § 1709(b) (9).

On a review of the entire record, I have no difficulty in finding: (1) that defendant made and used or caused to be made and used, a false writing or document in relation to a matter within the jurisdiction of the Federal Housing Administration; (2) that the defendant caused said acts to be done with knowledge that the writing or document was false and fictitious, in a material particular, in that the earnest money receipt recited a cash down payment when, in truth and in fact, there was no cash down payment; and (3) that such acts were done knowingly and willfully and with specific intent to induce the federal agency to act on the instruments presented.

I find defendant guilty as charged in Counts III, V and VII of the Indictment. I shall give defendant the benefit of the doubt on Count II. A pre-sentence report is ordered and defendant will report for sentencing at 10:30 A.M., September 14, 1966.