444 P.2d 743

The STATE of Arizona, Appellee,

v.

Kermit BURTON, Appellant.

No. 1 CA–CR 131.

Court of Appeals of Arizona.

Sept. 3, 1968.

Darrell F. Smith, Former Atty. Gen., Carl Waag, Asst. Atty. Gen., by J. S. Tegart, Phoenix, for appellee.

Machmer & Lehman, by Gerald A. Machmer, Phoenix, for appellant.

DONOFRIO, Judge.

This is an appeal from a conviction and sentence in the Superior Court for the crime of Drawing Check on No Account, a felony. The evidence shows that on April 20, 1965 the defendant, Kermit N. Burton, as general manager of the Midtown Escrow & Trust Co., opened two checking accounts with the Arizona Bank in the name of Midtown Escrow & Trust Co., hereafter referred to as the Escrow Company. There were other persons who also had authority to sign checks on the accounts. On March 9, 1966, because of the difficulties the Escrow Company was having in the handling of their checks, the two accounts were closed by the bank. At the time of closing the accounts there was a remaining balance of $12.02. The bank made a cashier's check out for this amount, mailing it to the defendant with a letter of explanation that the bank elected to close the account because of the manner in which it was handled. This cashier's check was cashed by the Escrow Company and bore the endorsement "Midtown Escrow & Trust Co. by Kermit N. Burton". Two months after the closing of the accounts two checks drawn on the closed accounts, bearing the signature "Kermit N. Burton", were cashed at Diamond's Department Store by two different ladies. These checks were returned by the bank to Diamond's marked "Account Closed". Diamond's then had the matter looked into by their security officer, Mr. Robert Heck, who obtained the checks and made inquiries which eventually led him to a new location for the Escrow Company which had moved from the location printed on the checks. Mr. Heck appeared at the new address and talked to the defendant. At that time Heck informed defendant the checks had been returned by the bank stamped "No Account". The defendant stated there "had been a mistake" and that the bank had

"messed up" his account, and that he would make payment of the checks in a few days. Mr. Heck agreed to this. At that time defendant also stated he was aware that the accounts were closed. He looked over the checks and stated they were his checks. Payment was not forthcoming and Mr. Heck a week later telephoned defendant who again promised to pay, and Mr. Heck again agreed to hold the checks. These particular checks were held for over a month under this agreement not to press charges if they were made good by the defendant. When they were not made good, criminal proceedings were instituted against defendant.

On July 29, 1966 the information was filed, charging defendant with counts of Drawing a Check on No Account, felonies. The jury found him guilty of one count, from which this appeal results, and acquitted him of the other count.

During the trial defendant did not take the stand but called Mrs. Robinson, part time general office worker for the Escrow Company, who, except for certain contradictions which will be noted, testified it was her custom to arrive at work after regular hours and do work according to written instructions left for her by her employer. At one place in her testimony she testified that on May 9, 1966 she arrived at work at 6:30 p. m. and found written instructions to type out checks to about ten people; that she took one of the several checkbooks which contained previously signed checks and typed out the checks, putting them in envelopes; that a few days later she was told she had used the checks from the wrong book and was supposed to have written them on a new account at the First National Bank. At first she testified she made out about ten checks from a list on the night of May 9, and that the checks were obtained from a book containing signed blank checks. Later she was confronted with several checks, some of which bore the date May 13, and when asked, she became hazy as to when she made them out. She was also hazy as to the signatures which were on the checks. For example, at one time she stated she made them out on the date they bore, and at another time she stated she may have typed some checks out a few days ahead of time, that is, that it was possible she postdated them. As to Exhibit 1, which is the check involved in this appeal, she stated this check bore defendant's signature, whereas some of the other checks shown her, purportedly signed by the defendant, did not bear his signature. The record does not contain Exhibit 1 as this check has been released, apparently for the reason that it has been paid by defendant and we are unable, therefore, to inspect it.

Appellant first raises the question of the sufficiency of the evidence, particularly on the issue of the intent to defraud; secondly, that even if there had been an intent to defraud shown in the beginning, the agreement by Diamond's to allow defendant time to make the checks good before starting legal action amounted to an extension of credit to him by Diamond's, bringing the matter within the purview of State v. Zent, 92 Ariz. 334, 376 P.2d 861 (1962); and lastly, that the court erred in allowing, without sufficient foundation, the testimony of the bank employee Dykman which concerned a conversation with the defendant wherein the closing of the accounts was brought to defendant's attention.

We treat the second question first. We do not agree that the failure to bring the charges prior to Heck's agreement with the defendant in which he attempted collection brings this case within the purview of *Zent,* supra. In *Zent* the facts were that the defendant told the person to whom he passed the checks that he did not think he had enough money in the bank to cover all the checks, but that the money would be in the bank at a later time. The court therein held that defendant's act in informing the payee that the funds were probably insufficient did not constitute the offense of drawing checks on insufficient funds because there was no representation that the checks were good at the time and therefore there was no intent to defraud. This is not the situation in the matter before us,

as the agreement with Heck did not take place until after the passing of the checks occurred. Defendant is asserting a doctrine which would hold that after checks drawn on no account are passed, the payee waives the defendant's criminal liability when later he allows defendant time to make the checks good. This is not a sound doctrine and we are unable to find any law to support it. Sometimes it is to the defendant's as well as the victim's good that the defendant be allowed to make restitution. We cannot see that it would serve any good purpose to hold that any efforts along the line of collecting on "Account Closed" checks bars future prosecution or wipes out the crime.

■ We now turn to the question involving the sufficiency of the evidence. In doing so we must view the evidence in the light most favorable to sustaining the verdict. State v. Weis, 92 Ariz. 254, 375 P.2d 735 (1962).

■ Defendant was prosecuted for the offense of Drawing Check on No Account denounced by A.R.S. § 13-316. Intent to defraud is an essential ingredient of this offense. In a prosecution, however, the State need not show that specific false representations extrinsic to the check itself were made. State v. Ellis, 67 Ariz. 7, 189 P.2d 717 (1948); *Weis,* supra.

■ In reviewing the evidence, we have no difficulty in finding that the prosecution has made out a prima facie case. The closing of the accounts and the making and passing of the checks two months later on these closed accounts are undisputed facts. There is ample evidence of defendant's knowledge that the accounts were closed. The bank employee testified as to closing the accounts and writing a letter directed to defendant informing him of this fact. At the same time, the employee enclosed in the letter a cashier's check for the balance remaining in the accounts after closing them. This cashier's check is in evidence and shows an endorsement and signature by defendant in the same handwriting as appears on the signature cards in evidence.

Furthermore, the security officer Heck testified that at the time he talked to defendant about the checks he showed them to him and that the defendant admitted they were his checks. This was all presented by the prosecution. In addition, defendant's only witness, Mrs. Robinson, testified relative to the check that she typed it out pursuant to instructions from her employer, the defendant, and that she did so as part of her regular and usual duties. Although she testified that certain other checks shown her at the trial did not look like defendant's signature, she testified that the check involved in this charge did bear defendant's signature.

Intent to defraud was shown by circumstantial evidence. Defendant did not take the stand, and the only contradictory evidence on the question was that of the witness Robinson. Because of the contradictions in her testimony the jury could well have disregarded any portion of it they disbelieved. Viewing the evidence as we must, in the light most favorable to sustaining the verdict, we hold that the prosecution has presented a prima facie case.

■ We now consider the final question of whether the court erred in permitting the witness Dykman to testify to a telephone conversation with the defendant wherein the closing of the accounts was brought to defendant's attention.

As foundation to the introduction of the evidence, the witness testified that he had seen the defendant in his office at the bank prior to the conversation. He testified that this was approximately March 8 or 9; that it was as the result of a call to the Escrow Company's office to have Mr. Kermit Burton (defendant) come in to discuss his checking accounts; and that the person who came in represented himself to be Kermit Burton. Dykman went on to generally describe the person, his build and physical appearance. Speaking of the defendant in the courtroom, he stated that to the best of his knowledge the defendant was that person. Regarding the telephone conversation, Dykman testified the telephoned the

Escrow Company asking specifically for Kermit Burton and that the person answering stated he was Kermit Burton. Thereafter the conversation concerning the accounts took place which showed a familiarity by the party with the subject matter. They discussed business they had together, namely, the checking accounts. The fact alone that the voice at the telephone was not identified does not render the conversation inadmissible. The foundation was sufficient when the witness testified he called the telephone number of the defendant's Escrow Company and the person with whom he talked said he was the defendant and displayed familiarity with the subject matter. 31A C.J.S. Evidence § 281.

Affirmed.

CAMERON, C. J., and STEVENS, J., concur.