**The PEOPLE of the State of Colorado, Plaintiff-Appellee,**

v.

**Elias LUCERO, Defendant-Appellant.**

No. 78–852.

Colorado Court of Appeals, Division 3.

Oct. 23, 1980.

Rehearing Denied Nov. 20, 1980.

J. D. MacFarlane, Atty. Gen., Richard F. Hennessey, Deputy Atty. Gen., Edward G. Donovan, Sp. Asst. Atty. Gen., Sarah S. Sammons, Asst. Atty. Gen., Denver, for plaintiff-appellee.

J. Gregory Walta, State Public Defender, Arthur R. Karstaedt III, Sp. State Public Defender, Denver, for defendant-appellant.

BERMAN, Judge.

Defendant appeals convictions by a jury of two counts of second degree forgery, one count of theft over $200, and one count of theft over $50 but less than $200.

The record reveals the material facts to be essentially uncontroverted. On October 28, 1977, defendant purchased a vacuum cleaner retailing for $129.95 from a Sears, Roebuck and Company store in Pueblo, Colorado. In doing so, defendant presented a Sears credit card which bore the name Raymond F. Russ. Defendant signed that name to the credit check a Sears salesperson prepared with use of the card. While still in the store, defendant in like manner purchased a color television set retailing for $329.95. Defendant then presented the sales slips for these purchases to a Sears warehouseman who, after obtaining the items, placed them in a car defendant designated. One Leo Santistevan was present with defendant at the time the goods were picked up.

The next day, October 29, defendant revisited Sears. After being approached by a salesperson, defendant asked to purchase "the very best stereo" Sears had to offer. Again he tendered a charge card bearing the name Raymond F. Russ. This time, though, the salesperson was one who knew Russ personally and recognized that defendant was not Russ. The store manager was alerted, police were summoned, and defendant was arrested, whereupon defendant remarked to the same salesperson who the day before had sold him the television, "It seems like they got me."

Upon his arrest, defendant told police that Santistevan had provided him with the credit card, had asked him to make the Sears purchases, and had rewarded him with a bottle of wine in return for his work of October 28. Defendant also said he expected to receive another bottle of wine following completion of the purchases on October 29.

At trial, Russ identified the material credit card as his and testified that he had not authorized anyone to use it. He also testified that he had known Santistevan for two years and that Santistevan could have taken the credit card from Russ' home.

Before trial, Russ had been scheduled to undergo a police polygraph examination.

In a pretrial meeting between counsel and judge, defense counsel sought a copy of a statement made by Russ during that supposed examination. At trial, a police detective testified that neither the polygraph report itself nor the officer who had taken it had been located. He confirmed, though, that written records of the results of any polygraph that may have been taken should be somewhere in the police department's files. The court then directed that further efforts be made to locate the officer who ostensibly conducted the examination. Nevertheless, defendant was never supplied with information as to the results of the purported examination.

## I

On appeal, defendant first contends that it was error to exclude testimony as to Russ' willingness to ratify the purchases here concerned. It is claimed that Russ would have testified, had he been permitted, that he did not wish to prosecute anyone, and that he would pay for any goods which were charged to his account with use of the credit card involved here. Defendant urges that the instant facts fall within an exception to the general rule that a victim's consent is not a defense to a criminal prosecution.

In effect, defense counsel subsumes three distinct arguments under the rubric of ratification, to-wit: (1) Russ, through Santistevan, gave his prior consent to defendant's making of the Sears purchases (2) even if no prior consent was given, Russ subsequently ratified the purchases, and (3) Russ does not want to prosecute defendant. Proper analysis requires that we give separate consideration to each of the foregoing.

First, if indeed Russ had given prior consent to these purchases there would have been no crime, for, of course, defendant would have lacked the culpable state of mind which constitutes an element of each charged offense. Here, however, the record is devoid of evidence that *anyone* received prior consent to make the purchases on Russ' behalf. On the other hand, there is competent evidence to support the proposition that no consent was given. Though defendant had ample opportunity to do so, he failed to refute that proposition in any way.

Second, the general rule is that subsequent ratification constitutes no defense to crime. *Gilbert v. U. S.*, 359 F.2d 285 (9th Cir. 1966), *cert. denied*, 385 U.S. 882, 87 S.Ct. 169, 17 L.Ed.2d 109; *State v. Christopherson*, 36 Wis.2d 574, 153 N.W.2d 631 (1967); *State v. Burton*, 8 Ariz.App. 186, 444 P.2d 743 (1968). We think the rule to be a sound one and expressly adopt it here. Its basis lies in the understanding that crime affects the overall security of the citizenry, not merely the interests of the immediate parties. Satisfaction of the latter does not imply preservation of the former.

Defendant's third argument is closely related to the second. And it is equally lacking in merit, for it is properly the office of the District Attorney to decide whether to institute prosecution based upon alleged criminal conduct. "Prosecution for an alleged crime is a litigation in which the People of the State of Colorado is the plaintiff and its representative is the District Attorney. The complaining witness, or the victim of the crime, has no control over the case, since he is not a party to it. He can neither require prosecution of the case, nor can he require its dismissal .... [Dismissal] is the function of the District Attorney." *People v. Dennis*, 164 Colo. 163, 433 P.2d 339 (1967). *See also* § 16–5–205, C.R.S. 1973 (1978 Repl.Vol. 8). While a victim's wishes occasionally may color the District Attorney's decision, manifestly they do not control it. *Dennis, supra. See* Crim.P. 48(a); *see also People v. District Court*, 196 Colo. 420, 586 P.2d 1329 (1978); *Turner v. District Court*, 188 Colo. 146, 533 P.2d 498 (1975). In view of the above, we perceive no reversible error in the trial court's exclusion of the proffered testimony.

## II

Defendant next contends that the trial court committed plain error in failing

to instruct the jury *sua sponte* that intoxication was an affirmative defense to the crimes with which he was charged. We disagree.

The evidence simply does not permit a conclusion that defendant was intoxicated at any time material to this prosecution. It is true that defendant himself took the stand and testified as to his drinking habits and as to having been arrested at various times for public intoxication. But it is also true that defendant stated neither that he was intoxicated at the time he made the purchases in issue, nor even that he had consumed any intoxicants whatever on October 28. In contrast, there is ample, even redundant testimony that defendant was not intoxicated. That defendant may have been drunk even many times in his life cannot alone warrant a conclusion that he was in fact intoxicated at times material to this case. *See People v. Brionez*, 39 Colo. App. 396, 570 P.2d 1296 (1977). Under this state of the record, the trial court did not commit even simple error in omitting an affirmative defense of intoxication instruction. Even less do we perceive plain error.

### III

■ Defendant next maintains that the trial court erred in admitting evidence of the events which occurred on October 29, the day after the crimes charged were committed. We disagree.

Before *each* witness' testimony concerning events of October 29, the trial court instructed the jury that the testimony was to be considered not for the purpose of showing guilt or innocence, but solely for the purpose of showing common scheme, plan, or design. And, the court reiterated that admonition in definite terms in the general charge to the jury. Thus, the procedure employed by the trial court fully complied with that mandated in *Stull v. People*, 140 Colo. 278, 344 P.2d 455 (1959).

Defendant, however, cites, *inter alia, People v. McKay*, 191 Colo. 381, 553 P.2d 380 (1976), for the proposition that evidence of another crime is not generally admissible to prove the crime directly at issue.

■ Defendant's reliance on *McKay* is misplaced. The Court in *McKay*, though reciting the general rule, held that "Evidence [of separate transactions] is admissible *to explain the entire criminal transaction*." (emphasis added) Here, the admitted evidence helped "explain the entire criminal transaction" by tending to show common scheme, plan, or design. And, it related to events which transpired less than twenty-four hours after those which form the basis of the instant convictions. That temporal proximity itself supports a conclusion that a common scheme, plan, or design could have been involved. *People v. Moen*, 186 Colo. 196, 526 P.2d 654 (1974). Hence, the evidence was properly admitted.

### IV

Defendant next insists that these convictions must be reversed because defendant did not have effective assistance of counsel. In support of his position, defendant points to the following: (1) defense counsel failed to subpoena Officer Griggs of the Pueblo Police Department who, in pretrial proceedings, testified as to defendant's appearance and conduct when arrested [1] (2) defense

---

1. In lieu of Griggs' testimony, defendant requested that transcripts of Griggs' testimony at the suppression and preliminary hearings be admitted. Defendant's offer of proof contained the following:

 At the suppression hearing:
 Q. (referring to Mr. Lucero) "Did he in any way appear to be intoxicated or under the influence of any drug?"
 A. "I don't recall that he was at all. I believe he had a faint odor of alcoholic beverage on his breath, but he did not appear to be intoxicated."

 Q. "And in your opinion Mr. Lucero did not appear to be intoxicated at that time?"
 A. "No, sir. I have arrested Mr. Lucero before for being intoxicated. He was not intoxicated on this day in my opinion."
 At the preliminary hearing:
 Q. "All right. And did [defendant] tell you whose credit card it was?"
 A. "The only thing he told me is that it belonged to Mr. Santistevan and he gave it to him."
 The court sustained the People's objection to admission of the tendered transcripts.

counsel failed to pursue the matter of the missing and assertedly critical polygraph report (3) defense counsel did not propose an intoxication instruction, nor did he raise any issue of instructional error in the motion for new trial so that such issue would be preserved for consideration on appeal, and (4) at no time did defense counsel move for judgment of acquittal.

The short answer to defendant's contentions is that he suffered no prejudice resulting from counsel's omissions. We think it useful, nevertheless, to treat each asserted defect individually.

■■■ First, as to the failure to subpoena Officer Griggs, the transcripts of Griggs' pre-trial testimony reveal, in view of other evidence adduced and especially in light of our resolution, *supra*, of the intoxication issue, that it would have been at best of small help to defendant's case. Second, our treatment, *infra*, of the issue of the People's failure to produce the polygraph report renders moot any neglect by defense counsel as to that matter. Third, as already shown, no intoxication instruction was warranted. And, finally defendant was not prejudiced by counsel's failure to move for judgment of acquittal, for the record reveals that the People had presented a prima facie case.

On the other side of the coin, even a superficial perusal of the record reveals that defense counsel was actively involved in defendant's behalf. Counsel, for example, was granted his motions for psychiatric examination of defendant, and for severance of defendant's trial from that of Santistevan. Counsel made numerous other appropriate motions and objections to testimony. He developed a cogent defense theory and proceeded consistently with it.

■■■ In light of the overall circumstances, we conclude that counsel's errors, if such they be, do not approach the level of those condemned in *People v. Gonzales*, 37 Colo. App. 8, 543 P.2d 72 (1975), and thus did not infringe upon defendant's right to reasonably effective assistance of counsel as guaranteed by the Sixth Amendment.

## V

Finally, defendant argues that the trial court erred by failing to enforce the People's cooperation with discovery in regard to a purported statement made by Russ to the Pueblo Police Department. We agree.

At the outset of the trial, defense counsel, in camera, brought to the Court's attention the People's failure to comply with discovery. Defense counsel claimed Russ had made a statement to the examining officer when he underwent a polygraph test, and that statement was not made available to defendant prior to the time of trial. The People denied the existence of such a statement, but were directed by the court to make inquiries into its possible existence. Subsequently, during the course of the trial, the People revealed that such a statement had been taken, but that it was not known whether a report of it had been made. As a result, the People were unable to furnish a copy to defendant. Testimony was elicited as to the existence of such a statement, and the court ordered that further efforts be made to produce a copy of it for defendant. The subject of Russ' statement was never addressed again by counsel or the court until defendant's motion for a new trial.

The People urge that defendant failed to demonstrate that he was prejudiced in any way by his failure to receive the statement, and did not establish even that such a statement exists. The People further insist that defendant has made no showing that the report or statement contained "'concrete evidence ... which may exonerate the defendant or be of material importance to the defense ....'" *People v. Smith*, 185 Colo. 369, 524 P.2d 607 (1974).

The People misconceive the function of discovery. Where, as here, the matter sought to be discovered is within the exclusive knowledge, possession, and control of the prosecution, defense counsel would have to be clairvoyant to know whether exculpatory matter is involved. And, the record

provides a basis for reasonable belief that the matter in question does exist. Nothing yet shown vitiates that basis.

 Material in possession of the police is constructively in the possession of the prosecution. Crim.P. 16; *Ortega v. People*, 162 Colo. 358, 426 P.2d 180 (1967). The prosecutor effectively conceded as much. Accordingly, it was incumbent upon the prosecution to provide defendant with information as to the existence and contents of the purported statement. The trial court's failure to enforce the prosecution's obligation in this regard constituted error. If the statement exists and tends to exculpate defendant, failure to produce it was prejudicial and the judgments of conviction must be reversed.

In view of the foregoing, we remand the case to the trial court with directions to determine with all due speed whether a record of the polygraph examination exists. If on remand such record is found, we further direct the trial court to order that it be made available to defense counsel, and to examine it to determine whether it contains exculpatory matter. In performing the latter task, the trial court should particularly direct its inquiry toward whether any statement was made concerning *prior* approval by Russ of the Sears purchases, or concerning possible agreement between Russ and Santistevan as to the purchases or as to defendant. In the event that the trial court finds exculpatory matter to be present, we reverse the judgments of conviction below and order a new trial. If no polygraph record is found to be extant or to have been so at the time of trial, or if any such record as may be discovered is found not to contain exculpatory matter, then the judgments below shall be affirmed, with the proviso that defendant may appeal the trial court's finding that the statement was without exculpatory content.

Cause remanded with directions.

STERNBERG, J., concurs.

SMITH, J., specially concurs.

SMITH, Judge, specially concurring.

I concur in the reasoning in the majority opinion and in the result reached. However, the conditional nature of the remand, in my view, creates uncertainty, and may substantially delay ultimate disposition of the case. I would either have ordered the record of the polygraph examination, if one exists, certified to us, since the question of whether it contains exculpatory matter is one of law, or alternatively, I would have granted a new trial with directions to consider the issue during the course of such trial.