UNITED STATES of America,
Plaintiff—Appellee,

v.

Gonzalo ALCALA–MARAVILLA,
Defendant—Appellant.

No. 02–10309.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 11, 2003.

Decided July 3, 2003.

Before: LEAVY, RYMER, and PAEZ, Circuit Judges.

MEMORANDUM *

Gonzalo Alcala–Maravilla ("Alcala") appeals his conviction, following a jury trial, for violating 8 U.S.C. § 1326(a). Alcala argues that the government did not prove that he committed an offense on, or reasonably near, the date alleged in the indictment. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we reverse and remand.

**I.  Background**

On the record before us, it appears that the government intended to prosecute Alcala for the crime of being *"found in"* the United States on *March 12, 2001,* after his

---

\* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

deportation following a conviction of an aggravated felony. In the course of the prosecution, the record discloses the following mistakes or misstatements—some made by the prosecution, some made by the court, and some made by defense counsel:

(1) The indictment was captioned "Illegal Reentry Following Deportation." The body of the indictment, however, alleges that "on or about November 20, 2000, the defendant was *found in* the Northern District of California." [1] In the course of the proceedings, it is unclear whether the government is prosecuting Alcala for "reentering" or being "found in" this country following deportation.

(2) Before trial, counsel and the court agreed that the jury would be instructed that the government would have to prove that the defendant was "found in" the Northern District of California. The court, however, instructed the jury orally and in writing that the government had to prove the defendant "entered the United States without consent of the Immigration and Naturalization Service." No mention was made of the need to find that the defendant was "found in" the United States, as alleged in the indictment. No objection was made to the erroneous instruction.[2] The error and confusion caused by this sequence of events is obvious.

(3) No evidence was presented to the effect that *anything* happened on November 20, 2000, the date alleged in the indictment. Evidence was presented that the defendant was interviewed by an INS agent on March 12, 2001. From the presentence report, prepared after trial, we learn that Alcala was arrested by local authorities on November 20, 2000. At some points during the trial, the November 20 date appeared to be the date that the prosecution was claiming the "reentry" occurred. At other points during the trial, the November 20 date appeared to be the date that the prosecution was claiming the defendant was "found."

(4) No evidence of venue was presented, except an entry on an affidavit signed by Alcala and dated March 12, 2001, which indicates that the affidavit was executed at "Martinez Main Detention Facility." No issue of proper venue in the Northern District of California was raised.

---

**1.** A grand jury charged Alcala as follows:

On or about May 11, 1999, the defendant GONZALO ALCALA–MARAVILLA, an alien, having been convicted of an aggravated felony as defined by 8 U.S.C. § 1101(a)(43), was arrested and deported from the United States; and thereafter, on or about November 20, 2000, the defendant was found in the Northern District of California, the Attorney General of the United States not having expressly consented to a reapplication by the defendant for admission into the United States, in violation of Title 8, United States Code, Section 1326.

**2.** Prior to trial, the parties and the judge agreed that the court would give a modified version of Ninth Circuit Model Instruction 9.5 for the charged offense. This proposed instruction required the government to prove each of the following elements beyond a reasonable doubt:

> *First*, the defendant is an alien;
> *Second*, the defendant was deported from the United States; and
> *Third*, the defendant **was found** in the United States without the consent of the Immigration and Naturalization Service.

(Emphasis added).

Before closing arguments, the judge instructed the jury that the government must prove each of the following elements beyond a reasonable doubt:

> *First*, the defendant is an alien;
> *Second*, the defendant was deported from the United States; and
> *Third*, the defendant **reentered** the United States without the consent of the Immigration and naturalization Service.

(Emphasis added).

(5) The government stated in its opening argument:

Special Agent Graham told you that a review of the records indicated that the defendant was found in the United States. He [the defendant] was interviewed on March 12th, 2001, but it doesn't mean that is the first day he came into the United States. That's when the INS had an opportunity to interview him.

And finally—so that proves that the defendant was later found in the United States. He was found here and interviewed here in the United States.

. . . .

Ladies and gentlemen, I believe after you've had a chance to deliberate and look through the evidence, you will find that there is—the government has proven to you beyond a reasonable doubt each and every one of these elements and that the defendant has violated the statute which prohibits him from illegally reentering the United States after deportation.

The foregoing arguments suggest that the government is prosecuting Alcala for some conduct that occurred *before* he was interviewed. By suggesting to the jury that the March 12, 2001, interview date is not the date of the crime for which he is being prosecuted, but rather suggesting that Alcala is being prosecuted for an event which occurred earlier, the government does not inform the jury, and probably confuses the jury, as to whether the prohibited conduct is Alcala's "reentry" or his being "found."

(6) Defense counsel, at one point in her closing argument, tried to relate the lack of evidence to both the reentry and being found on November 20, 2000:

It's very important that you all be clear on what it is you're required to find and what the government's proof shows or doesn't show. And what I believe I said before is that if after deliberating together, any of you have a reasonable doubt about whether Mr. Alcala–Maravilla reentered or was found in the United States on November 20th 2000, the date charged, then you must return—

Defense counsel appears to be arguing that "reentry" and "being found" are interchangeable violations, and if the jury has doubt about one or the other, it should return a not guilty verdict.

(7) The government ended its closing argument as follows:

Now, the second part of the indictment reads that after the—after the defendant had been deported, on or about November 20th, 2000, the defendant was found in the Northern District of California.

Now the evidence you have before you is that the defendant was interviewed on March 12th in the year 2001. Now that means that's the first piece of evidence you've received that the defendant was found in the United States. It doesn't mean that is the only time the defendant came into the United States from Mexico. And, obviously, there's a long distance between Martinez, California, and the border of Mexico. So it's left to your common sense to determine whether or not that is on or about. Again, you can look at the jury instructions for that.

The government, by pointing out the long distance between Martinez, California and the border of Mexico, and coupling this with the suggestion that the jury can use their "common sense" whether or not an event happened "on or about" leaves us wondering what event the government is referring to. The event appears to be the "reentry" across the Mexican border, even though the indictment charges Alcala with

the offense of being "found in" the United States following deportation.

(8) Alcala moved, under Federal Rules of Criminal Procedure 29, for a judgment of acquittal after the close of the evidence, and again after the jury returned its verdict. The only issue raised in the motion was the sufficiency of the evidence that no permission to reenter had been granted to Alcala. The Rule 29 motion raised no issue regarding the variance in dates and raised no issue of venue.

(9) The language chosen for the verdict form did not focus the jury on the event alleged to be the crime. The jury verdict read as follows: "We the jury in the above entitled case unanimously find the defendant Gonzalo Alcala–Maravilla guilty of *illegal reentry* into the United States following deportation in violation of 8 U.S.C. § 1326 *as charged in the indictment.*" (Emphasis added).

(10) The judgment states, under the heading "Date Offense Concluded," *"May 11, 1999."* This is not the date the "offense" was concluded. This is the date of Alcala's deportation, which is not an offense. Nothing in the judgment mentions the date alleged in the indictment, November 20, 2000. If the jury believed the evidence at trial, the date the "offense" was concluded was the date of the interview, March 12, 2001.

## II. Analysis.

Our analysis begins with the statute cited in the indictment, 8 U.S.C. § 1326(a), which provides that any alien who has been deported, and thereafter *"enters, attempts to enter, or is at any time found in, the United States"* without the consent of the Attorney General, is subject to fines or imprisonment. 8 U.S.C. § 1326(a). Under this statute, a deported alien may be convicted for either "entering," "attempting to enter," or being "found in" the

United States. These are *three* distinct offenses. *See United States v. Parga–Rosas,* 238 F.3d 1209, 1213 (9th Cir.2001); *United States v. Ruelas–Arreguin,* 219 F.3d 1056, 1061 (9th Cir.2000).

The indictment alleged that Alcala was "found in" the United States on or about November 20, 2000. The crime of being "found in" the United States is completed when the "alien is discovered and identified by the immigration authorities." *See Ruelas–Arreguin,* 219 F.3d at 1061, quoting *United States v. Hernandez,* 189 F.3d 785, 791 (9th Cir.1999). We recently held the government does not have to prove that an alien entered the United States illegally to establish that the alien violated the "found in" clause of 8 U.S.C. § 1326(a)(2). *United States v. Pina–Jaime,* 332 F.3d 609, 611 (9th Cir.2003) (deported alien who was paroled into the United States for a specified term incurred criminal liability under the "found in" clause of 8 U.S.C. § 1326(a)(2) where he voluntarily chose to remain in the country after the term of his parole had terminated).

Alcala argues that the record contains insufficient evidence to prove that he was found in the United States on or about November 20, 2000. The government counter-argues that the evidence that Alcala was "found" in the United States was overwhelming and undisputed and the variance in dates was immaterial.

We review the sufficiency of the evidence for plain error because Alcala did not specify the variance in dates as a basis for the Rule 29 motion. *See United States v. Rone,* 598 F.2d 564, 572 (9th Cir.1979); *Gilbert v. United States,* 359 F.2d 285, 288 (9th Cir.1966). We may correct an error on plain error review only if there is (1) an error (2) that was plain (3) that affects substantial rights; and (4) that seriously

affected the fairness, integrity or public reputation of judicial proceedings. Fed. R.Crim.P. 52(b); *United States v. Olano,* 507 U.S. 725, 732, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993).

On this record, we cannot conclude that the variance in dates rises to the level of plain error. *See United States v. Godinez–Rabadan,* 289 F.3d 630, 634 (9th Cir. 2002).

The record, however, reveals pervasive confusion among the court and both attorneys regarding the offense alleged in the indictment and the offense being proven at trial. As set forth above, the government failed to produce *any* evidence relating to November 20, 2000, the date in the indictment. The attorneys and the district judge agreed upon one set of jury instructions which conformed to the indictment (Alcala was "found in" the United States), but the court instead instructed the jury, both orally and in writing, that the jury must find that Alcala "reentered" the United States. The government, in closing argument, argued that "the defendant has violated the statute which prohibits him from illegally reentering the United States after deportation," and suggested that the offense conduct occurred before the March 12, 2001, interview. The judge, following an objection in closing argument, stated that Alcala must be "found in the United States on or about November 20, 2000," but this remark was directed at the attorneys, there was no instruction correcting the earlier oral instruction, and the error was thereafter repeated in the written instruction. The jury's verdict recited that Alcala was "guilty of illegal reentry" … "as charged in the indictment." And finally, the judgment recites that Alcala was convicted of "illegal reentry" with an offense conclusion date of May 11, 1999, which is neither the "reentry" date, nor the "found in" date, but rather is Alcala's deportation date. Given this confusion, we cannot determine whether the jury decided that Alcala "reentered" the United States, or was "found in" the United States, or what happened on or about November 20, 2000.

Furthermore, the record contains no evidence that the March 12, 2001, interview took place in the Northern District of California. Although the government's exhibit indicates that an interview was conducted on March 12, 2001, at the "Martinez Main Detention Facility," there is no evidence establishing that this facility is located in the Northern District of California. The issue of establishing venue can be waived, *see United States v. Roberts,* 618 F.2d 530, 537 (9th Cir.1980), and on this record would have been waived if the prosecution were for the offense of "being found in." However, if the prosecution were for the offense of "reentry," proper venue might be a significant issue.

## III. Conclusion.

The record discloses confusion throughout Alcala's trial regarding which conduct was the offending conduct, on which date, and at which location. While each error by itself may not rise to the level of reversible error, the cumulative effect may nevertheless be so prejudicial as to warrant reversal. *See United States v. Wallace,* 848 F.2d 1464, 1475 (9th Cir.1988). Considering the entire record, we have no confidence in the fairness or integrity of this judicial proceeding and the resulting jury verdict. Accordingly, we vacate Alcala's conviction and remand for further proceedings, including a new trial.

REVERSED AND REMANDED.